UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RAYMOND GONZALES,

                                        Plaintiff,

            vs.                                                    9:08-CV-629
                                                                   (LEK/ATB)
D. CARPENTER, *et al*,

                                        Defendants.

_____

RAYMOND GONZALES, Plaintiff *pro se*
RICHARD LOMBARDO, Asst. Attorney General, for Defendants

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by Senior

U.S. District Judge Lawrence E. Kahn, pursuant to 28 U.S.C. § 636(b) and LOCAL

RULES N.D.N.Y. 72.3(c).  Plaintiff's amended complaint ("AC," Dkt. No. 110) seeks

monetary damages, under 42 U.S.C. § 1983, for various alleged violations of his

constitutional rights arising from his confinement by the New York State Department

of Correctional Services ("DOCS") and the Office of Mental Health ("OMH"),

between July 2007 and February 2008.  Presently before this court is defendants'

motion to dismiss the amended complaint for failure to state a claim, pursuant to FED.

R. CIV. P. 12(b)(6).  (Dkt. No. 120).  Plaintiff has filed a memorandum of law,

affidavit, and voluminous documentary exhibits in opposition to the defendants'

motion.  (Dkt. No. 129).  This court recommends granting defendants' motion and

dismissing the amended complaint in its entirety, for the following reasons.

## I.    Facts and Contentions[1]

Plaintiff's current claims arise from events, between July 24, 2007 and February 13, 2008, relating to his transfers among and between the Special Housing Unit ("SHU") at Upstate Correctional Facility ("Upstate"), the SHU and the OMH satellite unit at Great Meadow Correctional Facility ("Great Meadow"), and the Central New York Psychiatric Center ("CNYPC"), which was operated by OMH.[2]  The amended complaint names 14 defendants from DOCS and OMH.  The DOCS defendants are Brian Kourofsky, a sergeant assigned to the SHU at Upstate; David Rock, the Superintendent at Great Meadow; David Carpenter, Deputy Superintendent for Programs and, for a time, the Acting Superintendent at Great Meadow; John Baisley, a lieutenant assigned to Great Meadow; Mark Cleveland, James Rando, and Richard Reynolds, sergeants assigned to the SHU at Great Meadow; and Gary DeFranco, a correction officer at Great Meadow.  The OMH defendants are Hasan Rahman,

---

[1] On June 16, 2008, plaintiff commenced this civil rights action by filing a complaint (Dkt. No. 1) against 29 defendants.  By order dated June 20, 2008 (Dkt. No. 4), Judge Kahn dismissed six of those defendants.  On April 24, 2009, the New York State Attorney General's Office filed a motion to dismiss the complaint on behalf of 20 of the remaining defendants.  (Dkt. No. 76).  By order dated August 28, 2009, Judge Kahn granted plaintiffs request to dismiss this action with prejudice as against two of the remaining defendants (not represented by the Attorney General).  (Dkt. No. 104).  On January 22, 2010, plaintiff filed a motion for leave to file an amended complaint.  (Dkt. No. 106).  By order dated March 31, 2010, Judge Kahn granted plaintiff's motion to amend and denied the pending motion to dismiss the original complaint as moot.  (Dkt. No. 109).  The current motion to dismiss was filed by the Attorney General's Office on June 23, 2010, on behalf of all 14 defendants named in the amended complaint.  On July 9, 2010, plaintiff filed a letter requesting permission to again amend his complaint, rather than respond to the defendant's motion to dismiss.  (Dkt. No. 122).  By text order dated July 12, 2010, this court denied plaintiff's motion to amend his complaint again, and provided him with an extension of time to file his opposition to the motion to dismiss.

[2] Plaintiff was also briefly confined at Downstate Correctional Facility ("Downstate"), although his stay there does not figure into his various claims.

Kalyana Battu, and Jose Gonzalez, psychiatrists assigned to Great Meadow; Pamela

Roberts, a psychiatrist's assistant assigned to Great Meadow; Donald Sawyer,

Executive Director at CNYPC; and Rajeshwar Kartan, a psychiatrist assigned to

CNYPC.

The defendant's memorandum of law fairly and cogently sets forth the factual

allegations of plaintiff's lengthy, and not entirely comprehensible, amended complaint.

(Defs.' Memo. of Law at 2-13, Dkt. No. 120-1 at 4-15).  This court will briefly

summarize and supplement the pertinent facts here, and will provide relevant details,

as necessary, in the analysis of plaintiff's claims below.

From at least 2001, plaintiff was confined in various DOCS facilities in the

Northern and Western Districts of New York.  Between 2001 and 2009, plaintiff filed

eight civil rights actions in federal court and two cases in the New York Court of

Claims relating to various complaints arising from his confinement.  (AC ¶¶ 20-29).

Two of the more recent civil rights complaints included allegations regarding

plaintiff's confinement at Upstate in 2006 and early 2007, although Brian

Kourofsky–the only defendant from Upstate in this action–was not named as a

defendant in the prior actions.  (9:06-CV-1424, 2/22/2010 Decision and Order of

Hood, DJ, Dkt. No. 95 at 1-5[3]; 9:07-CV-406, Complaint ¶¶ 27-168, Dkt. No. 1).   In

July 2007, while he was confined at Upstate, and thereafter, to the extent allowed,

plaintiff was working on perfecting an appeal of a state conviction involving an

_____

[3] Judge Hood's decision is reported as *Gonzales v. Wright*, 9:06-CV-1424 (JMH), 2010
WL 681323, at *1-2 (N.D.N.Y. Feb. 23, 2010).

3

alleged assault on a DOCS employee at Attica Correctional Facility ("Attica"), in Wyoming County, in the Western District of New York.  (AC ¶¶ 60-61).

Throughout the amended complaint, plaintiff consistently and vehemently denies that he suffered from mental illness or needed mental health treatment. However, beginning in July 2007, DOCS began a series of steps which subjected plaintiff to unwanted evaluations and treatment for mental illness.  In support of a certification stating that plaintiff was suffering from a mental illness requiring involuntary treatment, psychiatrist Hasan Rahman concluded that plaintiff was suffering from chronic delusional disorder.  Defendant Rahman noted that:

> [Gonzales] has been . . . putting underwear on top of his head with the belief that chemicals or poisons [are] coming through the roof and [he is] smearing feces . . . in SHU as well as in OBS.  He is having many tickets for bizarre and unhygenic  behaviors.

(AC, Ex. H, Dkt. No. 110-2 at 20).[4]

Plaintiff was confined in the OMH mental health satellite unit at Great Meadow, and examined by various of the defendant psychiatrists, between July 24 and August 1, 2007 and, later, between September 24th and October 1st of the same year.[5]  On or

---

[4] Sealed Ex. 8 to defense attorney Lombardo's declaration (Dkt. No. 120-2) describes, in more detail, some of the behaviors of plaintiff at Upstate which caused the defendant psychiatrists to conclude that plaintiff was suffering from serious mental illness and required treatment.  At least one of plaintiff's prior civil rights complaints alleged that DOCS employees at Upstate subjected him to "infections harmful chemical substances" by placing the substances in the ventilation system and burned him with laser beams shot through the lights in his cell. (9:06-CV-1424, Dkt. No. 95 at 2-3 & n.3, 2010 WL 681323, at *1).

[5] Plaintiff was discharged from the Great Meadow OMH satellite unit and returned to the Upstate SHU on August 1, 2007.  On August 24, 2007, plaintiff was transferred to Downstate Correctional Facility, and then sent back to the SHU at Great Meadow on August 30, 2007.  On September 24, 2007, plaintiff was returned to the satellite unit at Great Meadow.

about October 1, 2007, plaintiff was transferred to CNYPC.  Eventually, OMH took plaintiff to court and obtained orders involuntarily committing him to CNYPC for up to six months (AC, Ex. M, Dkt. No. 110-2 at 30), and allowing plaintiff's treating psychiatrists to involuntarily medicate him (AC, Ex. Q, Dkt. No. 110-2 at 41-42).  Plaintiff was released from CNYPC and returned to a DOCS facility on February 13, 2008.

Liberally construed, the amended complaint claims that plaintiff's constitutional rights were violated in connection with his confinement by DOCS and OMH between July 2007 and February 2008 in the following ways.  Plaintiff alleges that his transfers to the OMH satellite unit at Great Meadow, his involuntary confinement and treatment at CNYPC, and various other alleged adverse actions were taken against him, as part of a conspiracy to retaliate for the exercise of his First Amendment rights– his right to pursue civil rights and other actions against DOCS, as well as his appeal of his conviction involving the alleged assault on a DOCS employee at Attica.  Plaintiff claims that his transfers and other actions taken by DOCS were also carried out pursuant to a conspiracy to deny him access to courts, in particular, by interfering with his ability to perfect the appeal of his criminal conviction.  Plaintiff also contends that his classification as mentally ill, and the conditions of his confinement and the involuntary treatment he suffered at the satellite unit at Great Meadow and CNYPC violated his rights under N.Y. Correction Law § 402, as well as his Fourteenth Amendment right to due process and his Eighth Amendment right not to be subjected to cruel and unusual conditions of confinement, or deliberate indifference to his

medical and basic needs.

Defendants argue that plaintiff's various claims are frivolous, irrational, and incredible, and fail to state viable causes of action under Section 1983. This court agrees that plaintiff's conclusory claims of retaliation are insufficient to establish a plausible link between activity protected by the first amendment–*e.g.*, filing civil rights complaints against DOCS–and any adverse actions taken against him. The documents attached to the motion papers of both sides establish that the actions of the defendants were not the cause of any concrete harm to plaintiff in connection with the pursuit of his criminal appeal, thereby undermining plaintiff's claim that defendants unconstitutionally interfered with his right of access to courts. The transfers and involuntary treatment and medication of plaintiff for perceived mental illness were not carried out in such a way that violated plaintiff's due process rights; and, even if procedures under N.Y. Correc. Law § 402 were not properly followed, that would not support a constitutional claim under Section 1983. Finally, plaintiff fails to state a plausible claim that the conditions of his confinement or the conduct of any of the named defendants against him constituted deliberate indifference to his serious medical needs or cruel and unusual punishment.[6] Accordingly, this court will recommend that defendants' motion to dismiss be granted and the amended complaint

---

[6] The defendants also advance arguments that particular defendants were not personally involved in alleged constitutional violations and, hence, cannot be liable for damages. As discussed briefly below, to the limited extent it is necessary to address the personal involvement arguments, they further support dismissal of plaintiff's amended complaint. Defendants also assert that they should be protected by qualified immunity, which the court will address briefly at the end of this report-recommendation.

dismissed in its entirety.

## II.   **<u>Motion to Dismiss</u>**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the

court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).  In this case, plaintiff attached a significant number of documents to his amended complaint that this court has considered in making its recommendation.  In the case of a motion to dismiss involving a *pro se* plaintiff, the court may look beyond the complaint to plaintiff's opposition papers. *See Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y.2006) (citation omitted).[7]

A court should dismiss an *in forma pauperis* ("IFP") case[8] at any time if the court determines, *inter alia*, that the action is frivolous.  28 U.S.C. § 1915(e)(2)(B)(I). In determining whether a case is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "[T]he *in forma pauperis* statute, unlike Rule 12(b)(6), 'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke*, 490 U .S. at 327). Dismissal of an IFP action is proper, for example, when the allegations are the product

---

[7] In support of the motion to dismiss, the defense attorney filed a supporting declaration, which included a limited number of supporting documents, one of which was filed under seal (Ex. 8). (Dkt. No. 120-2).  All of the documents submitted by the defendants, with the exception of Ex. 8, were also attached to plaintiff's affidavit in opposition to the defense motion.  Ex. 8 includes the papers supporting the petition to allow CNYPC to administer medication to plaintiff over his objection.  Plaintiff attached the petition to his amended complaint (Ex. P, Dkt. No. 110-2 at 37-39), but not the supporting papers referenced in the petition.  (Lombardo Decl. ¶¶ 9-11).

[8] Plaintiff was granted IFP status in the instant case.  (Dkt. No. 4).

of delusion or fantasy.  *Id.* (quoting *Neitzke*, 490 U .S. at 328); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir.1998).

## III.   Retaliation

### A.   Legal Standards

While "[a] prisoner has no liberty interest in remaining at a particular correctional facility, prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights . . . ."  *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998).[9]  In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action.  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary

---

[9] It is well-established that convicted prisoners have no right to choose the prison in which they are housed.  *Montanye v. Haymes*, 427 U.S. 236, 243 (1976).  Prison authorities are entrusted with unfettered discretion to transfer prisoners from one institution to another. *Pugliese v. Nelson*, 617 F.2d 916, 922-23 (2d Cir.1980).

firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003)) (omission in the original).  This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights.  *Id.*

Claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted).  Accordingly, a plaintiff must set forth non-conclusory allegations to state a viable claim of retaliation.  *Id.*[10]

In order to support a claim for conspiracy pursuant to section 1983, there must be "(1) an agreement . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002); *Cusamano v. Sobek,* 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009).  An agreement must be proven with specificity, as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient.  *See Iqbal v. Hasty,* 490 F.3d 143, 177 (2d Cir. 2007), *overruled on other grounds sub nom. Ashcroft v. Iqbal*, _ U.S. _, 129 S. Ct. 1937 (2009); *see also Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir. 1999).  "A complaint containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a motion to

---

[10]   Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct.  *Id.* (citing, inter alia, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.).

### B.    Application

Plaintiff appears to allege that all 14 defendants, who worked at three different New York state facilities, conspired to retaliate against him for filing prior civil law suits, and for pursuing an appeal of his conviction for assaulting a DOCS employee at Attica.  (AC, Claims for Relief A-E).  Plaintiff claims that his transfers to the OMH satellite unit at Great Meadow (AC ¶¶ 46, 95), the delay of his legal papers after his move to Great Meadow SHU in September 2007 (AC ¶¶ 66-69), and his transfer to CNYPC and the applications for court orders to have him committed and involuntarily medicated (AC ¶¶ 121, 126), were all the result of a retaliatory conspiracy.

The plaintiff's prior legal actions (AC ¶¶ 20-29) were constitutionally protected activity for a prisoner.  And this court will assume, for the purposes of this motion, that the various transfers and involuntary treatment and medication of plaintiff constituted "adverse action" against him.  *See, e.g., Morales v. Mackalm*, 278 F.3d 126, 131-32 (2d Cir. 2002) (the allegation that defendants transferred inmate plaintiff to a psychiatric facility must be construed as describing an adverse action), *abrogated on other grounds sub nom. Porter v. Nussle*, 534 U.S. 516, 532 (2002).  However, the plaintiff's conclusory allegations of retaliation do not establish a plausible claim that there was any causal connection between his protected activity and any alleged adverse actions taken against him.  With one exception, discussed further below, the amended complaint does not set forth any specific factual allegations that support plaintiff's claim that he was the subject of intentional retaliation by any of the

11

defendants.  Plaintiff's conclusory and frivolous charges of pervasive and collusive retaliation against him do not support a plausible inference that the defendants retaliated against him, for filing various lawsuits and pursuing a criminal appeal, by transferring him to facilities where he received involuntary mental health treatment and medication.

There is no indication that any of the defendants named in this action were involved in any of plaintiff's prior litigation.  (AC ¶¶ 20-29).  Plaintiff's appeal for an assault conviction, and most of his civil rights complaint against DOCS involved facilities other than Upstate, Great Meadow, and CNYPC, where the named defendants in this action were assigned.

Four of plaintiff's prior civil rights actions involved alleged prior incidents at Upstate, where only one of the named defendants in this action (Sgt. Kourofsy) worked.[11]  The only allegation against defendant Kourofsky in the amended complaint in this action was that he advised plaintiff, on July 24, 2007, that, as a result of orders from "Albany," plaintiff was being transferred from Upstate to Great Meadow.  (AC ¶¶ 31-41).  The first alleged retaliatory adverse action about which plaintiff complains involves his confinement and mental health treatment in the OMH satellite unit at Great Meadow.  Plaintiff alleges nothing to support a plausible inference that a correctional sergeant, with no connection to the DOCS or OMH medical staff, could

---

[11] One of those cases dated back to 2001 (AC ¶ 20; Dkt. No. 9:01-CV-1811, Dkt. No. 47) and one was a suit against federal agents (AC ¶ 26; 9:07-CV-458, Dkt. No. 1).

have caused the inmate's transfer for a mental health evaluation,[12] even if Sgt. Kourofsky knew of plaintiff's various prior lawsuits and was inclined to retaliate against him (which plaintiff also does not allege in the amended complaint).[13]   Nor does the amended complaint set forth any factual allegations which would suggest that Sgt. Kourofsky at Upstate would have had any control over the conditions of plaintiff's confinement at Great Meadow[14] or any influence over the treatment provided to plaintiff at the OMH satellite unit.[15]   Accordingly, defendant Kourofsky

---

[12] *See, e.g., McQuilkin v. Central New York Psychiatric Center*, 9:08-CV-975 (TJM/DEP), 2010 WL 3765847, at *15 (N.D.N.Y. Aug. 27, 2010) (Report-Recommendation) (plaintiff's claim that he was transferred to CNYPC in retaliation for serving a notice of summons on the prison superintendent fails because the record reflects that the transfer decision was made by OHM care providers following an evaluation of plaintiff's mental status), adopted, 2010 WL 3765715 (N.D.N.Y. Sept. 20, 2010).

[13] Perhaps to bolster the conclusory claims of retaliation in his amended complaint, plaintiff makes additional allegations with respect to defendant Kourofsky in his papers opposing defendants' motion.  Plaintiff claims that Sgt. Kourofsky "ordered" at least two searches of plaintiff's cell in the Fall of 2006, during which officers damaged the legal papers relating to plaintiff's appeal.  (Pltf.'s Aff. ¶¶ 21, 25, Dkt. No. 129-2).  The supporting documents that plaintiff provides concerning these cell searches, do not mention Sgt. Kourofsky, nor do they reference any legal papers.  (Ex. G, Dkt. No. 129-3 at 22; Ex. J, Dkt. No. 129-3 at 29). Moreover, in a prior complaint in which plaintiff alleges a retaliatory cell search at Upstate, during the same time period, that damaged the papers relating to plaintiff's criminal appeal, plaintiff does not implicate Sgt. Kourofsky.  (9:06-CV-1424, Dkt. No. 1 ¶¶ 126, 134-42; Dkt. No. 95 at 3-4, 27-28, 2010 WL 681323, at *1, 13).  In any event, even if plausible, these allegations are not part of the amended complaint in this case and do not provide any support for an inference that Sgt. Kourofsky caused plaintiff's transfer for a psychiatric evaluation in July 2007.

[14] *See, e.g., Green v. Bauvi*, 792 F. Supp. 928, 941-942 (S.D.N.Y. 1992) (inmate may recover damages for unconstitutional conditions of confinement only from persons who created or were responsible for those conditions).

[15] *Smith v. Woods*, 9:05-CV-1439 (LEK/DEP), 2008 WL 788573 at *9 (N.D.N.Y. March 20, 2008) (social worker and psychologist in prison had no authority to override the decision of the treating psychiatrist regarding appropriate treatment of an inmate/patient and could not be liable for the doctor's medical decisions).  *See also  Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (the failure of non-doctors at a prison to intercede in the medical treatment of an inmate is not unreasonable, because they lack the authority to intervene in medical decisions).

13

could not have been personally involved in how plaintiff was treated at Great

Meadow, and could not be liable under Section 1983, even if plaintiff's constitutional

rights were violated at that facility.[16]

The only factual allegation in the amended complaint that supports an inference

that any defendant harbored a retaliatory motive against plaintiff involves defendant

Rando, a sergeant assigned to the Great Meadow SHU.  After he was transferred back

to Great Meadow (on August 30, 2007), plaintiff was visited (on September 4th) by

attorneys assigned to assist him in several civil rights suits he filed in the Western

District of New York (involving facilities other than Great Meadow and Upstate,

which are in the Northern District of New York).  (AC ¶ 68).  Plaintiff alleges that, on

September 11, 2007, he asked Sgt. Rando about obtaining his legal papers, and

defendant Rando said that plaintiff would not get his papers because he had five

lawsuits filed.  (AC ¶ 69).  Notwithstanding this alleged "retaliatory" comment,

plaintiff received his legal papers a week later (on September 18th), from defendant

Cleveland.  (AC ¶ 70).

Cases in this circuit have held that the theft, confiscation, or destruction of an

inmate's legal documents can constitute "adverse action" for the purposes of a

retaliation claim.  *See, e.g., Smith v. City of New York*, 03 Civ. 7576, 2005 WL

1026551, at *3 (S.D.N.Y. May 3, 2005); *Smith v. Maypes-Rhynders*, 07 Civ. 11241,

2009 WL 874439, at *5 (S.D.N.Y. Mar. 31, 2009).  However, a mere delay in the

---

[16] *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (personal involvement is a prerequisite to the assessment of damages in a section 1983 case); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

14

transfer of plaintiff's legal papers, even if motivated by retaliation, would appear to be the type of *de minimis* action that would not be considered "adverse."  *See, e.g., Rivera v. Pataki*, No. 04 Civ. 1286, 2005 WL 407710, at *19 (S.D.N.Y. Feb. 7, 2005) (several temporary incidents of actively preventing plaintiff from mailing his legal documents were not sufficiently serious to constitute "adverse action").  Moreover, it seems implausible that a DOCS employee at the Great Meadow SHU would be motivated to retaliate against an inmate who had been confined there for less than two weeks on the basis of law suits that did not involve defendant Rando, or anyone else at Great Meadow.

The fact that defendant Rando allegedly told plaintiff he would not get his legal papers back, but they were, in fact, delivered a week later by another sergeant, undercuts the inference that Sgt. Rando was the cause of the delay in plaintiff's receipt of his documents.  *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 526 (S.D.N.Y. 2009) (the fact that the inmate plaintiff's property was ultimately returned to him further suggests that the defendants did not intentionally lose or steal his personal property, notwithstanding the vague threats one defendant made to plaintiff).  While plaintiff alleges that his legal papers were not delivered to him until 19 days after his return to Great Meadow, he was transferred from Upstate to Downstate to Great Meadow over the course of six days, which might be expected to cause delays in the transfer of papers and personal possessions.  While the timing of defendant Rando's alleged remarks during the period while plaintiff's papers were delayed provides some support for an inference of retaliation, this court finds the plaintiff's allegations do not

state a plausible claim against defendant Rando. *See, e.g., McQuilkin v. CNYPC*, 2010 WL 3765847, at *15 (the service of a summons on the prison superintendent, followed in short order by the seizure of the plaintiff's personal property, was an insufficient basis upon which a reasonable factfinder could find retaliation); *Williams v. Goord,* 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) (although the temporal proximity of a protected activity and the alleged adverse action provides circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment) (citing *Ayers v. Stewart*, 101 F.3d 687 (Table), No. 96-2013, 1996 WL 346049, at *1 (2d Cir. June 25, 1996).

Nothing else in the amended complaint provides any factual support for plaintiff's claim that all of the defendants conspired to retaliate against him by, *inter alia*, falsely labeling him as mentally ill and subjecting him to involuntary and unneeded mental health treatment and medication.  As discussed further below, the records submitted by plaintiff, and the adjudication of issues relating to his mental health in two state court proceedings, demonstrate that many of the allegations in the amended complaint reflect plaintiff's delusions and paranoia, notwithstanding his vehement denials of mental illness.  Plaintiff's claims in this and prior civil rights complaints indicate that he suffers from "a victimization fantasy." *Gonzales v. Wright*, 2010 WL 681323, at *12 (as courts in the Second Circuit have consistently recognized, "it is utterly unjust to haul people into federal court to defend against, and disprove, delusions") (collecting cases).  In that context, the court finds that all of plaintiff's allegations of retaliation, even if, in a few instances they might arguably

16

survive under the standards of Rule 12(b)(6), are the results of plaintiff's delusions and fantasy, and are clearly without factual basis, and subject to dismissal as frivolous under 28 U.S.C. § 1915(e)(2)(B)(I). *Denton v. Hernandez*, 504 U.S. at 32 (citing *Neitzke*, 490 U .S. at 327-28).

## IV.   Access to the Courts

### A.   Legal Standards

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).  In order to establish a claim that a prisoner's right of access to the courts has been abrogated, the plaintiff must establish that deliberate and malicious interference impeded his access to the courts, and that, as a result of that interference, the inmate suffered actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349, 351 (1996); *Cancel v. Goord*, 00-CV-2042, 2001 WL 303713, at *4 (S.D.N.Y. March 29, 2001).  *Lewis* also requires a showing of prejudice to an existing meritorious action involving a direct or collateral attacks on the inmate's conviction, or to a challenge to the conditions of confinement.  518 U.S. at 353, 355.  "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

### B.   Application

Plaintiff alleges that all 14 defendants, from three different facilities, conspired

to deprive him of access to the courts in connection with his appeal of his conviction for assaulting a DOCS employee at Attica, and his various civil rights actions.  (AC, Claims for Relief A-E).  Plaintiff claims that his transfers to the OMH satellite unit at Great Meadow (AC ¶¶ 46, 49, 95), the delay of his legal papers after his move to Great Meadow SHU in September 2007 (AC ¶¶ 66-69), and his transfer to CNYPC and the applications for court orders to have him committed and involuntarily medicated (AC ¶¶ 121, 126, 128, 133), were all the result of the conspiracy to violate his First Amendment right of access to courts.  As with the alleged conspiracy to retaliate against plaintiff, the conclusory allegations of a pervasive illegal agreement to deny him access to the courts are insufficient to state a valid cause of action for conspiracy under Section 1983.  In any event, under the facts that plaintiff has asserted in opposition to this motion, he cannot establish a plausible claim that any of the named defendants actually prejudiced him by impeding his ability to pursue his criminal appeal or his civil rights actions.

Plaintiff alleges that the defendants' purported conspiracy actually prejudiced him only with respect to his efforts to perfect his criminal appeal between July 24, 2007, when he was first transferred to Great Meadow, to February 13, 2008, when he was released from CNYPC.  The motion papers of both the defendants and the plaintiff extensively describe and document the protracted period during which plaintiff was attempting to perfect this appeal.  (Lombardo Dec., Dkt. No. 120-2; Pltf.'s Aff., Dkt. No. 129-2).  For the purposes of deciding the instant motion as to the allegations in the amended complaint, it is not necessary to review the entire

procedural history of plaintiff's appeal.

On May 21, 2007, the Supreme Court, Appellate Division, Fourth Department, granted plaintiff the last of several extensions, **until August 20, 2007**, to perfect his *pro se* appeal from his conviction involving the alleged assault of a DOCS employee. (Pltf.'s Aff ¶ 42; Ex. Q, Dkt. No. 129-3 at 48).  By that time, plaintiff had drafted an appellate brief, assembled the record of the trial court proceedings needed for the appendix, and submitted these papers to the Clerk of the Appellate Division.  (Pltf.'s Aff. ¶ 33).  However, on January 26, 2007, the Clerk rejected this submission and returned plaintiff's papers because he failed to submit either a stipulation of all parties regarding the contents of the record, or an order of the trial court settling the contents of the record.  (Pltf.'s Aff. ¶ 36; Ex. M, Dkt. No. 129-3 at 39).

Plaintiff was confined at the Great Meadow OMH satellite unit for the first time from July 24, 2007 until August 1st, when he was returned to Upstate.  On August 14th, plaintiff requested another extension from the Appellate Division, because, despite numerous prior requests, he had not yet received a stipulation or order settling the record from the District Attorney or trial judge.  (Pltf.'s Aff. ¶ 54).[17]  Shortly thereafter, on August 17th, plaintiff received the executed, certified stipulation necessary to complete his appellate papers, and began preparations to perfect his

---

[17] In his affidavit in opposition to plaintiff's motion, plaintiff alleges that, on August 4, 2007, defendant Kourofsky ordered a search of his cell, during which two officers "did spread some liquid and stain a lot of pages of several copies of the briefs of his appeal."  (Pltf.'s Aff. ¶ 52).  These allegations were not made in the amended complaint, and plaintiff does not allege, even in his later affidavit, that the alleged cell search was the cause of his failure to submit his appeal by the August 20th deadline.

appeal.  (Pltf.'s Aff. ¶¶ 56, 57; Ex. Y, Dkt. No. 129-3 at 64-65).  Plaintiff's affidavit does not explain why, despite the fact that he had all of the necessary papers in his cell at Upstate, he did not submit the documents necessary to perfect his appeal by the August 20, 2007 deadline.

On August 24, 2007, plaintiff was transferred to Downstate, and then was sent to Great Meadow on August 30th.  (Pltf.'s Aff. ¶ 60).  On September 18th, while in the SHU at Great Meadow, plaintiff received a notice from the Appellate Division that his request for a further extension of his appeal was denied; however, plaintiff was given leave to renew his motion upon a showing that his appeal had merit.  (Pltf.'s Ex. ¶ 62; Ex. Z, Dkt. No. 129-3 at 67).  On September 18, 2007, plaintiff received his transferred legal papers while still in the Great Meadow SHU.  (Pltf.'s Aff. ¶ 65). Plaintiff claims that he was working on an application to renew his motion to perfect his appeal on September 24th, when he was removed to the satellite unit at Great Meadow, where he was not allowed to have his papers.  From there, plaintiff was transferred to CNYPC, and was held there until February 13, 2008.  Plaintiff alleges that he was unable to get access to his legal papers or work to perfect his appeal during the period he was confined at CNYPC.  (Pltf.'s Aff. ¶¶ 66-68).

On April 18, 2008, a month after his release from CNYPC,  plaintiff submitted another application to the Appellate Division in an apparent effort to get permission to belatedly perfect his appeal.  On May 14, 2008, the Appellate Division denied his application, again "with leave to renew upon a showing of sufficient facts to demonstrate a meritorious appeal."  (Pltf.'s Aff, Ex. 1, Dkt. No. 129-3 at 70).  Plaintiff

complains, in his affidavit, that he was unable to make any further submission to the Appellate Division because his legal papers were not returned to him. (Pltf.'s Aff. ¶ 68). However, the attachments to plaintiff's affidavit in opposition to defendant's motion includes a copy of his appellate brief (Ex. W, Dkt. No. 129-4 at 1-47), his proposed appendix (Ex. X, Dkt. No. 129-6 at 1-80), and the executed stipulation as to the contents of the record (Ex. Y, Dkt. No. 129-3 at 64-65).

The facts acknowledged by plaintiff and the documents that he has submitted in opposition to defendants' motion, establish that the conduct of the defendants, in transferring him to Great Meadow and them committing him to CNYPC, was not the cause of his failure to perfect his appeal. The District Attorney and the trial judge in plaintiff's criminal case (neither of whom are defendants here) delayed in providing the requested stipulation as to the contents of the record, thereby preventing plaintiff from perfecting his appeal before August 17, 2007. Plaintiff provides no explanation as to why he did not submit, to the Appellate Division, the necessary paperwork, all of which he had at the Great Meadow SHU between August 17th and August 24th, when he was transferred to the satellite unit. In any event, after plaintiff was released from CNYPC in February 2008, he was in the same position with respect to his appeal as he was after August 20, 2007–he could renew his motion to perfect his appeal upon a showing that his appeal had merit. Plaintiff's stated excuse for not renewing his motion and making a showing of merit–that his legal papers were not returned to him after his release from CNYPC–is clearly baseless given that he has attached those very papers to his affidavit in opposition to the instant motion.

This court finds that plaintiff's failure to perfect his appeal was not caused by any action of the defendants in this action; plaintiff either concluded that he could not establish that his appeal had merit or he failed, without excuse, to take available steps to perfect his appeal.  Either way, based on the authority cited above, plaintiff's claim that the defendants maliciously impeded him in pursuing a meritorious action, in violation of his First Amendment right of access to courts, must fail.

## V.     Confinement at the OHM Satellite Unit at Great Meadow

Plaintiff asserts that he was unlawfully confined to the OMH satellite unit at Great Meadow for two periods in 2007 by defendant Kourofsky, a corrections sergeant at Upstate; defendants Rock, Carpenter, Baisley, Cleveland, Rando, Reynolds, and DeFranco, on the administrative or corrections staff at Great Meadow; defendant Roberts, an OMH psychiatrist's assistant at Great Meadow; and defendants Rahman, Battu, and Gonzalez, OMH psychiatrists assigned to Great Meadow.  While the amended complaint is not entirely clear about which of plaintiff's constitutional rights were allegedly infringed by his confinement in the satellite unit, this court will consider possible due process and Eighth Amendment violations.

The court concludes that the short-term confinement of plaintiff in a prison mental health clinic for observation did not implicate a liberty interest triggering due process protection.  Nothing involving plaintiff's stay at the OMH satellite unit subjected him to cruel and unusual punishment under the Eighth Amendment.  Accordingly, this court recommends dismissal of the claims involving plaintiff's confinement at the Great Meadow satellite unit.

### A.    Due Process

Plaintiff was confined in the satellite unit at Great Meadow, for psychiatric observation and treatment, from July 24 through August 1, 2007, and again, from September 24th through October 1st, when he was moved to CNYPC.  The amended complaint contains very few factual allegations about the conditions of plaintiff's confinement in the satellite unit.  Plaintiff complains that he was "confined in the satellite unit naked only with a gown for person crazy [sic]," (AC ¶ 43) and that he was asked a lot of "stupid" questions by the defendant psychiatrists (AC ¶¶ 44, 48, 90).  Although plaintiff alleges that at least one of the psychiatrists at the Great Meadow satellite unit prescribed him unwanted medication (AC ¶ 52), he does not claim he was actually involuntarily medicated at Great Meadow, and the psychiatrist's report indicates that plaintiff resisted treatment and refused all medication.  (AC, Ex. H, Dkt. No. 110-2 at 20).

Plaintiff has consistently claimed that he was not mentally ill, and did not require or want mental health treatment.  The psychiatrists who observed plaintiff at the satellite unit all ultimately concluded that plaintiff was in need of involuntary care and treatment in an inpatient hospital for the mentally ill, and that, as a result of his mental illness, plaintiff posed a substantial threat of harm to himself and others.  (AC, Ex. H & I, Dkt. No. 110-2 at 18-22).  As discussed below, the conclusion that plaintiff was mentally ill and required treatment and medication was subsequently validated by several other psychiatrists and two state court judges.

To establish a claim based on a violation of due process, a plaintiff must

23

establish a constitutionally protected liberty or property interest that a plaintiff was denied without due process. *See, e.g., Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001). A state prisoner generally has no liberty interest in being housed in a particular facility. *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Matiyn v. Henderson*, 841 F.2d 31, 34 (2d Cir. 1988). "[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Atypicality in a *Sandin* inquiry is normally a question of law. *Colon v. Howard*, 215 F.3d 227, 230–31 (2d Cir. 2000); *Sealey*, 197 F.3d at 585. When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement. *See Sealey*, 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335–36 (2d Cir. 1998).

It is clear that a prisoner's transfer to a mental hospital is "qualitatively different" from the punishment characteristically suffered by a person convicted of crime, and implicates a liberty interest protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. at 479 n.4, 484 (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)). However, this court does not equate plaintiff's relatively brief period of observation and treatment in the Great Meadow satellite unit with a transfer to a mental hospital. *See, e.g.*, *Cabassa v. Gummerson*, 9:01-CV-1039, 2008 WL 4416411, at *11 (N.D.N.Y. Sept. 24, 2008) (distinguishing confinement in a prison infirmary for, *inter*

24

*alia*, mental health problems, and commitment to a "mental hospital," and finding that a total confinement of 101 days in the infirmary plus 60 days in segregated housing did not implicate a liberty interest).  This court concludes that temporary confinement of an inmate with clear mental health problems for a total of less than 30 days[18] for observation and evaluation in the psychiatric unit within a prison does not implicate a liberty interest.  *See, e.g.*, *Gay v. Turner*, 994 F.2d 425, 427 (8th Cir.1993) (five temporary transfers to the mental health unit for evaluation did not implicate Due Process Clause); *Jefferson v. Helling,* 324 Fed. Appx. 612, 613 (9th Cir. 2009) (plaintiff's emergency transfer to, and short-term detention in a prison's mental health unit did not entitle inmate to a prior hearing); *Anderson v. Banks*, 06-CV-0625 (GLS/DRH), 2008 WL 3285917, at *7-8 (N.D.N.Y. Aug. 7, 2008) (transfer of inmate to mental health unit for monitoring and observation for three days was justified and did not constitute an undue hardship given plaintiff's mental health history and current symptoms); *Nwaokocha v. Sadowshi*, 369 F. Supp. 2d 362, 373-74 (E.D.N.Y. 2005) (finding that, where a prisoner is mentally ill and displaying "significant warning signs" of an altered mental state, "time of segregation on a justified suicide watch" falls within the purview of discretionary confinement decisions made by the

---

[18] In the absence of a detailed factual record, cases in this circuit typically affirm dismissal of due process claims in cases where the period of time spent in segregated housing was short– e.g., 30 days–and there was no indication that the plaintiff endured unusual conditions.  *Palmer v. Richards*, 364 F.3d 60, 65-66 (2d Cir.2004). (collecting cases).  While this authority is not dispositive in the context of confinement in a prison mental health unit, it supports the conclusion that plaintiff's confinement was, in the absence of any allegations of unusual conditions of confinement, sufficiently short to avoid due process scrutiny.

25

corrections department and normally expected by a prisoner, implicating no liberty interest).  The conclusion that due process protection would not apply to plaintiff's temporary confinements in the OMH satellite unit is reinforced by the observation of the court in *Nwaokocha*, which was echoed by Judges Homer and Sharpe in *Anderson v. Banks*:

> Given the emotional and psychological challenge that prison imposes on mentally ill inmates, and the sometimes severe effects that can result–including, but not limited to, inmate suicides and harm to others–it is important that prison officials be encouraged to attend to mental health considerations rather than be penalized for having done so.

*Nwaokocha*, 369 F. Supp. at 374 (citations omitted); *Anderson v. Banks*, 2008 WL 3285917, at *2, 7 n.7.

### B.    Eighth Amendment

#### 1.    Conditions of Confinement

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994).  To establish an Eighth Amendment claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate

26

indifference to his health or safety.  *See Farmer*, 511 U.S. at 834.

Conditions of confinement are not cruel and unusual for Eight Amendment purposes simply because they are "restrictive and even harsh." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985).  Rather, many unpleasant aspects of prison life "are part of the penalty that criminal offenders pay for their offenses against society." *Id*. (citation omitted).  Plaintiff's complaints about the conditions of confinement in the Great Meadow satellite unit were limited to his objection that he was clothed only in a hospital gown, like a "crazy" person.  (AC ¶ 43).  Being required to wear a hospital gown for a mental health evaluation  hardly constitutes cruel and unusual conditions of confinement that would violate plaintiff's Eighth Amendment rights.  *See, e.g., Salahuddin v. Dalsheim*, 94 CIV. 8730, 1996 WL 384898, at *14 (S.D.N.Y. July 9, 1996) (an inmate who claimed that he was deprived "of his belt, shoe laces, and personal property for seven days, subjected to 24-hour observation, placed with mentally ill inmates, denied a change of 'Greens,' and otherwise subjected to the regulations governing inmates in the [Mental Health Unit]" did not establish an objectively serious deprivation).[19]  *Cf. Borges v. McGinnis*, 03-CV-6375 , 2007 WL 1232227, at *4-6 (W.D.N.Y. Apr. 26, 2007 ) (keeping inmate, clothed only in paper gown and slippers, with a thin mattress and no blanket, in a room with an open window that reduced the temperature to approximately 50 degrees, for three days, did not meet the objective element of an Eighth Amendment violation)

---

[19] Unlike the plaintiff in this case, Salahuddin did not have a mental health designation which would have supported his confinement in the mental health unit. *Salahuddin*, 1996 WL 384898, at *3.

## 2.    Allegedly Inadequate Medical Care

Deliberate indifference to a convicted prisoner's serious medical needs

constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as

made applicable to the states through the Fourteenth Amendment. *Estelle v. Gamble*,

429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference

standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The first element

is objective and measures the severity of the deprivation, while the second element is

subjective and ensures that the defendant acted with a sufficiently culpable state of

mind. *Id.*

The objective prong of the standard is satisfied "when (a) the prisoner was

'actually deprived of adequate medical care,' meaning prison officials acted

unreasonably in response to an inmate health risk under the circumstances, and (b) 'the

inadequacy in medical care is sufficiently serious.' *Bellotto v. County of Orange*, 248

Fed. Appx. 232, 236 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263,

279-80 (2d Cir. 2006)).  If the "unreasonable care" consists of a failure to provide any

treatment, then the court examines whether the inmate's condition itself is

"sufficiently serious." *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003).

When a prisoner alleges "a temporary delay or interruption in the provision of

otherwise adequate medical treatment," the court must focus on the seriousness of the

particular risk of harm that resulted from the challenged delay or interruption, rather

than the prisoner's underlying medical condition alone." *Id*. at 185.  The standard for

determining when a deprivation or delay in a prisoner's medical need is sufficiently

serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange*, 248 Fed. Appx. at 236 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) and *Smith v. Carpenter*, 316 F.3d at 187 (actual medical consequences are highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837.

In this case, plaintiff clearly disagreed with the medical judgment of the OMH psychiatrists that he required mental health observation, treatment, and medication. However, a difference of opinion between a prisoner and prison doctors regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d at 703. Even if the defendants had been negligent in diagnosing or treating plaintiff's mental health conditions, that would not constitute "deliberate indifference." *Farmer v. Brennan*, 511 U.S. at 835. Because plaintiff's claims amount to mere disagreement regarding treatment, or perhaps, allegations of medical malpractice, they are not actionable under Section 1983. *Ross v. Kelly*, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (1992) (table); *Kellam v. Hunt*,

29

9:04-CV-1225 (LEK/GJD), 2007 WL 2764814, at *6 (N.D.N.Y. Sept. 20, 2007) (disagreements over medications, diagnostic techniques, forms of treatment, and the timing of their intervention implicate medical judgments and not the constitutional standards for medical care).[20]

### 3.    Excessive Force

The amended complaint alleges that, on September 24, 2007, defendants Cleveland, Rando, Reynolds, and DeFranco forcibly removed plaintiff from his SHU cell at Great Meadow when he admittedly refused to come out to be evaluated by defendant Battu, an OMH psychiatrist.  (AC ¶ 88).  Plaintiff does not claim that he was the victim of  excessive force, or that he was injured, and his factual allegations are insufficient to state a cause of action under the Eighth Amendment.

The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).  To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective

---

[20] It should be noted that, even if plaintiff's treatment in the satellite unit constituted a constitutional violation, only the psychiatrists, who determined the duration of his confinement and the course of his treatment, would be personally involved and liable under Section 1983.  See notes 12 & 14-16 above.  *See also Brock v. Wright,* 315 F.3d 158, 164 (2d Cir. 2003) (prison superintendent with no medical training who deferred completely to a prison doctor in ruling on a grievance regarding medical care, while perhaps negligent, was not "deliberately indifferent"); *Greenwaldt v. Coughlin*, No. 93 Civ. 6551(LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.").  Accordingly, defendants Kourofsky, Rock, Carpenter, Baisley, Cleveland, Rando, Reynolds, DeFranco, and Roberts would be entitled to dismissal on plaintiff's claims regarding his confinement and treatment in the satellite unit even his constitutional rights had been violated.

and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*.  (quoting *Hudson*, 503 U.S. at 7).

Plaintiff's allegation that the defendants knocked him down, grabbed him, and placed him in handcuffs in order to remove him from his cell (AC ¶ 88) are not sufficient to satisfy the objective prong of the Eighth Amendment analysis. *See, e.g., Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (allegations that an inmate was "bumped, grabbed, elbowed, and pushed . . ." by correction officers are "not sufficiently serious or harmful to reach constitutional dimensions .. ."). Moreover,

31

the amended complaint do not provide any factual support for a claim that the
defendant correction officers did not make a good faith effort to maintain and restore
discipline in the face of plaintiff's refusal to obey direct orders.  When an inmate
refuses to comply with an order to exit his cell, reasonable force may be used to
enforce the directive.  *See, e.g., Harris v. Ashlaw*, 9:07-CV-0358 (LEK/DEP), 2007
WL 4324106, at *7 (N.D.N.Y. Dec. 5, 2007) *(*citing *Brown v. Busch*, 954 F. Supp.
588, 594-97 (W.D.N.Y. 1997) (prison officials did not use excessive force against
inmate who had refused to comply with a direct order, where officials forced inmate
back into his cell by allegedly pushing, shoving, and striking him)); *James v.
Coughlin*, 13 F. Supp. 2d 403, 408-10 (W.D.N.Y. 1998) (alleged conduct of
corrections officer in pushing inmate back into his cell when inmate refused to comply
with order to remain silent and became loud, boisterous, and disorderly did not involve
a violation of eighth amendment).

## VI.   Involuntary Confinement and Medication at CNYPC

Plaintiff alleges that he was involuntarily confined and treated at CNYPC
between October 1, 2007 and February 13, 2008 (AC ¶¶ 107, 148), in violation of
various rights under the U.S. Constitution and N.Y. Correc. Law § 402.[21]  Although it

---

[21] Under Section 402, the superintendent of a correctional facility, upon receiving a report
from a physician that an inmate is, in his or her opinion, mentally ill, must apply to the court for
designation of two examining physicians.  The two physicians, after conducting a personal
examination, may certify that the inmate is mentally ill and in need of care and treatment, if
deemed appropriate.  N.Y. Correc. Law § 402.  In the event that certification is made by the two
examining physicians, the superintendent must then apply to an appropriate state court judge for
an order of commitment, with notice to the affected inmate, as well as any known relative.  N.Y.
Correc. Law § 402(3).  The inmate thereafter may request a hearing, and the court additionally
may request one of its own initiative.  N.Y. Correc. Law § 402(5).  In the event the court

is not entirely clear from the amended complaint, it appears the intended defendants for this claim are defendants Rock and Carpenter, the Superintendent and Acting Superintendent of Great Meadow; defendants Roberts, Rahman, Battu, and Gonzalez–on the OMH mental health staff at Great Meadow; and defendants Sawyer and Kartan of CNYPC.[22]  Plaintiff alleged that he experienced a significant change in his living conditions and was housed together with mentally ill prisoners, which placed his life in danger.  (AC ¶¶ 108-109).  The amended complaint does not provide any further factual allegations regarding how plaintiff's life was placed in danger at CNYPC.

N.Y. Correc. Law § 402(9) authorizes the admission of an inmate to a mental hospital on an emergency basis, pending the filing of a commitment petition, upon the certification of two physicians that the inmate suffers from a mental illness which is likely to result in serious harm to himself or others.  Such certifications were made by defendant Rahman on October 1, 2007 (AC, Ex. H, Dkt. No. 110-2 at 19-20) and defendant Battu on September 28, 2007 (AC, Ex. I, Dkt. No. 110-2 at 22).  On October 1, 2007, defendant Carpenter, as Acting Superintendent of Great Meadow, applied to the New York Supreme Court, Oneida County to cause an examination of the plaintiff

---

determines that the person is mentally ill and in need of care and treatment, the court may order him or her committed for a period not to exceed six months so that the inmate may be transferred into an OMH facility.  *Id.*

[22] Defendants argue that certain of the defendants would not be liable under Section 1983, even if plaintiff's constitutional rights were violated in connection with his commitment to, and treatment at CNYPC, because they were not personally involved in those actions.  (Defs.' Memo. of Law at 21).  In the context of a motion to dismiss, at least defendant Rock would be entitled to dismissal on this basis, under the authority cited in notes 12 and 15, above.

by two physicians.  (AC, Ex. G, Dkt. No. 110-2 at 17).  By order dated October 4, 2007 (AC, Ex. F, Dkt. No. 110-2 at 15), Supreme Court Justice Robert F. Julian designated two psychiatrists, Drs. Sangani and Kamath to examine the plaintiff.  On October 14, 2007, Drs. Sangani and Kamath signed a certificate, stating that the plaintiff was mentally ill and in need of care and treatment.  (AC, Ex. L, Dkt. No. 110-2 at 28).

On October 15, 2007, defendants Sawyer and Carpenter filed a notice and petition, pursuant to N.Y. Correc. Law § 402(3), seeking an order committing the plaintiff to CNYPC.  (AC, Exs. J & K, Dkt. No. 110-2 at 24, 26).  Plaintiff received the notice on October 24th (AC ¶ 129), and a lawyer from Mental Hygiene Legal Services was appointed to represent him in connection with the court hearing.  (AC ¶ 134).  At the hearing on the application to commit him, plaintiff made statements and submitted documents (AC ¶ 137), and defendant Kartan testified in support of the application (AC ¶ 138).  Following the hearing, on October 24, 2007, Justice Anthony F. Shaheen committed plaintiff to the custody of CNYPC for a period not to exceed six months.  (AC ¶ 139; Ex. M, Dkt. No. 110-2 at 30).

On October 16, 2007, defendant Kartan notified plaintiff that he intended to seek court authorization to medicate plaintiff over his objections.  (AC ¶ 140; Ex. N, Dkt. No. 110-2 at 32).  On November 27th, plaintiff was provided with a notice and a copy of a petition dated November 13th, advising him of a court hearing at which CNYPC would seek permission to involuntarily medicate plaintiff.  (AC ¶ 141; Exs. O & P, Dkt. No. 110-2 at 34-35, 37-39; Lombardo Dec., Ex. 8 (sealed), Dkt. No. 120-

2).  Plaintiff was provided with legal representation from Mental Hygiene Legal Services in connection with the hearing, on December 6th, to determine whether he would be involuntarily medicated.  (AC ¶¶ 142-43).  Following the hearing, Supreme Court Justice John W. Grow entered an order finding that plaintiff lacked the capacity to make a reasoned decision regarding his own treatment and authorizing CNYPC to administer medication to him, over his objection.  (AC, Ex. Q, Dkt. No. 110-2 at 41-42).

Plaintiff alleges that the various mental health professionals, who attested to his mental illness and his need for treatment and medication, provided false diagnoses, as part of a conspiracy with other defendants.  (AC ¶¶ 126, 130, 133,138, 144).  Plaintiff originally named Drs. Sangani and Kamath as defendants, but requested that they be dismissed from the action, with prejudice.  (Dkt. Nos. 103, 104).  By order dated June 20, 2008, Senior District Judge Lawrence E. Kahn held that any testimony provided by defendant Kartan in state court proceedings supporting the commitment and involuntary medication of plaintiff would be absolutely privileged under New York state law, and could not support a claim under section 1983.  (Dkt. No. 4 at 4-5).

While it is not entirely clear which constitutional rights plaintiff alleges were violated by his involuntary commitment and treatment to CNYPC, this court will consider possible claims under the Due Process Clause and the Eighth Amendment. The court concludes that, although plaintiff was entitled to due process protection in connection with his commitment to CNYPC and involuntary medication, he received more-than-adequate process under New York state procedures.  Even if the applicable

35

state procedures were not followed to the letter, this would not support a federal constitutional due process claim.  This court further finds that the conditions of plaintiff's confinement at CNYPC and his treatment and medication did not violate his Eighth Amendment rights.  Accordingly, the court concludes that plaintiff's claims relating to his commitment and treatment at CNYPC do not state viable causes of action under section 1983 and should be dismissed.

### A.    Due Process and  N.Y. Correction Law § 402

A prisoner's transfer to a mental hospital, and the corresponding loss of liberty and "stigmatizing consequences," trigger Due Process protection.  *Vitek v. Jones*, 445 U.S. at 491-92, 493-94.  "When a person's liberty interests are implicated, due process requires at a minimum notice and an opportunity to be heard."  *Mental Hygiene Legal Service v. Spitzer*, 07 Civ. 2935, 2007 WL 4115936, at *5 (S.D.N.Y. Nov.16, 2006) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (plurality opinion).  The Supreme Court has approved the use of involuntary confinement where there has been a determination that the person in question currently suffers from a "mental abnormality" and is likely to pose a future danger to the public.  *Abdul-Matiyn v. Pataki*, 9:06-CV-1503 (DNH/DRH), 2008 WL 974409, at *10 (N.D.N.Y. Apr. 8, 2008) (citing *Kansas v. Hendricks*, 521 U.S. 346, 371 (1997)).[23]

Similarly, involuntary medication with psychotropic drugs "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

---

[23] The discussion of the applicable due process standards draws heavily on Magistrate Judge Peeble's analysis in *McQuilkin v. CNYPC*, 2010 WL 3765847, at *19-20.

life," thereby creating a protected liberty interest. *Sandin v. Conner*, 515 U.S. at 479
n.4, 484 (citing *Washington v. Harper*, 494 U.S. 210, 221-222 (1980).  A state may
treat a prisoner with anti-psychotic drugs against his will if an administrative
determination concludes he is "dangerous to himself or to others and the treatment is
in the inmates' medical interest." *Washington v. Harper*, 494 U.S.  at 225-227.  The
Second Circuit has held that "due process requires an opportunity for hearing and
review of a decision to administer antipsychotic medication–but such a hearing need
not be judicial in nature." *Project Release v. Prevost*, 722 F.2d 960, 981 (2d
Cir.1983)).  Moreover, due process does not require a guarantee that a physician's
assessments in their commitment evaluation be correct. *Rodriguez City of New York*,
72 F.3d 1051, 1062 (2d Cir.1995).

       As outlined above, the amended complaint and supporting documents establish
that plaintiff was committed to CNYPC only after notice and a judicial hearing, with
the assistance of counsel, pursuant to N.Y. Correc. Law § 402.  The order committing
plaintiff to CNYPC for care and treatment was based on the finding of at least two
examining psychiatrists that, as a result of his mental illness, plaintiff posed a
substantial threat of harm to himself or others.  (AC, Ex. L, Dkt. No. 110-2 at 28).  It is
clear, from the face of the complaint and the attached exhibits, that plaintiff received
adequate procedural due process in connection with his commitment to CNYPC.
*McQuilkin v. CNYPC*, 2010 WL 3765847, at *20.

       In connection with his involuntary medication, plaintiff again received notice,
and participated in a judicial hearing, with assistance of counsel.  The court, which

ordered that medication be administered to plaintiff over his objection, relied on

psychiatric reports that plaintiff posed a danger to himself and others (Lombardo Dec.,

Ex. 8 (sealed), Dkt. No. 120-2), ruled that plaintiff lacked "the capacity to make a

reasoned decision concerning his own treatment," and found that "the proposed

treatment is appropriate, narrowly tailored to the needs of the patient, and is in the

patient's best interests . . ."  (AC, Ex. Q, Dkt. No. 110-2 at 41-42).  Plaintiff received

procedural protection under New York law that exceeded what was required by the

Due Process Clause.  *Sheridan v. Dubow*, 92 Civ. 6024, 1993 WL 336946, at *3

(S.D.N.Y. Sept. 3, 1993) (in New York State, a patient who refuses to consent to the

administration of anti-psychotic drugs is entitled to a *de novo* judicial determination

where the patient is afforded representation by counsel, exceeding the federal due

process requirements of *Washington v. Harper*) (citing *Rivers v. Katz*, 67 N.Y.2d 485,

496 (1983)).

       To the extent that plaintiff argues that defendants failed to follow the

procedures outlined in the Section 402 or other New York statutes, his challenge to his

commitment and involuntary medication would still fail.  Section 1983 imposes

liability for violations of rights protected by the Constitution and laws of the United

States, and not for violations arising solely out of state or common law principles.

*See, e.g., Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir.1985); *Cusamano v. Sobek*,

604 F. Supp. 2d  416, 482 (N.D.N.Y.2009) ("A violation of a state law or regulation,

in and of itself, does not give rise to liability under 42 U.S.C. § 1983.") (collecting

cases).  For this reason, even if defendants had failed to follow the letter of the New

York provisions with regard to his confinement and treatment, that failure would not provide the basis a cognizable section 1983 claim. *McQuilkin v. CNYPC*, 2010 WL 3765847, at *20 n.20.

Plaintiff argues that the state judges and the defendants responsible for his commitment to CNYPC and involuntary medication were wrong and/or malicious; he claims he was not mentally ill and did not require mental health treatment and medication.  Defendants argue, persuasively, that plaintiff is precluded from a factual challenge to the basis for his commitment and involuntary medication, determined in a prior state court proceedings, in which he had a full and fair opportunity to try to establish that he was not mentally ill or in need of treatment.  (Defs.' Memo. of Law at 21) (citing *Kulak v. City of New York*, 88 F.3d 63, 71-72 (2d Cir. 1996) (issue preclusion bars Section 1983 claim based upon involuntary commitment where state court, in a habeas proceeding, had previously held that plaintiffs confinement to mental hospital was lawful).[24]  *See also Harvey v. Sawyer*, 09-CV-598 (FJS/DRH), 2010 WL 3323665, at *4-5 (N.D.N.Y. July 22, 2010) (Report-Recommendation) (plaintiff was collaterally estopped from pursuing Eighth Amendment or Due Process claims relating to his confinement and involuntary medication at CNYPC because he

---

[24] Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, the federal court must afford a prior state court judgment the same preclusive effect that the judgment would be given in the courts of the state in which it was decided. *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982)).  Pursuant to New York law, the doctrine of collateral estoppel applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and the issue has been necessarily decided in the prior action, is decisive of the present action, and the litigant had a full and fair opportunity in the prior action to contest the decision. *Id.*  (citing *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71 (1969))

had a full and fair opportunity to participate in prior court hearings which resulted in the confinement and involuntary medication, and which determined, *inter alia*, that he was mentally ill, in need of treatment for his own health and safety, and incompetent to make decisions about his own care), adopted, 2010 WL 3323669 (N.D.N.Y. Aug. 20, 2010 ).

Magistrate Judge Peebles and District Judge McAvoy, in this district, have held the *Rooker-Feldman* doctrine[25] precludes an inmate plaintiff from basing a 1983 action on injuries allegedly resulting from confinement in a mental hospital and involuntary medication that resulted from prior state court rulings. *McQuilkin v. CNYPC*, 2010 WL 3765847, at *18-19 (Report-Recommendation) adopted, 2010 WL 3765715.  In any event, plaintiff received adequate due process under federal constitutional standards in connection with his commitment and involuntary medication, and his claims that he was not mentally ill or in need of treatment are clearly the result of delusions.  For all of these reasons, plaintiff's challenge to his commitment and treatment, based on the Due Process Clause and N.Y. Correc. Law § 402, are frivolous, fail to state a claim, and should be dismissed.

---

[25] "Where a federal suit follows a state suit, the former may be prohibited by the so-called *Rooker-Feldman* doctrine in certain circumstances." *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 83 (2d Cir.2005).  A federal district court "has no authority to review final judgments of state court judicial proceedings." *District of Columbia v. Feldman*, 460 U.S. 462, 482 (1983).  "To do so would be an exercise of appellate jurisdiction . . ." which only the Supreme Court possesses over state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  In order for the Rooker-Feldman doctrine to apply, plaintiff must have lost in the state court; he must complain of injuries caused by the state court judgment; he must invite the federal court to review and reverse the judgment; and the state court judgment must have been rendered prior to the filing of the federal district court proceeding. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d at 85.

### B.    Eighth Amendment

Based on the authority cited in Sections V. B. 1. and 2., any Eighth Amendment challenge to plaintiff's confinement and treatment at CNYPC should be dismissed. Plaintiff's only complaint about the conditions of confinement at CNYPC was that he was confined with mentally ill prisoners, which, he claims, without any supporting factual allegations, endangered him.  Plaintiff fails to state a plausible claim that the conditions at CNYPC subjected him to a substantial risk of serious harm.  With respect to his medical treatment, plaintiff relies solely on his disagreement with the medical judgment of the mental health professionals about his diagnosis and treatment.  Such disagreement, or even a claim that the defendants committed medical malpractice, would not support a constitutional claim based on inadequate care. *McQuilkin v. CNYPC*, 2010 WL 3765847, at *17.

## VII.  Qualified Immunity

The defendants have asserted that they are entitled to qualified immunity in connection with plaintiff's claims.  In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201(2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (holding that, "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory in all cases").  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  This court need not

41

address qualified immunity with respect to plaintiff's various causes of action because, as discussed above, he has not established any alleged violations of his constitutional rights.[26]

WHEREFORE, based on the findings above, it is

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 120) be GRANTED, and that plaintiff's amended complaint be DISMISSED IN ITS ENTIRETY.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

---

[26] In general, "the defense of qualified immunity cannot support the grant of a . . .12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir.1983). This is so because qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *Stachell v. Dilworth*, 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Dismissal for failure to state a claim is thus generally appropriate only where the complaint itself sets up on its face the qualified immunity defense. *See, e.g., Green v. Maraio*, 722 F.2d at 1019. There may well be some defendants who would be entitled to qualified immunity based solely on the allegations in the complaint and supporting documents–*e.g.* the defendants without medical qualifications who deferred to the decisions of treating physicians with respect to plaintiff's mental health treatment. See, e.g., *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (non-doctors, whose failure to intercede in the medical treatment of an inmate was, even if wrongful, not objectively unreasonable, were entitled to summary judgment on qualified immunity grounds).

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 3, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge

43